UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LARISSA LAMAY,

     Plaintiff,

                                 No. 4:20-cv-12617

v

                                 HON. STEPHANIE DAWKINS

MICHIGAN STATE POLICE, an
agency of the State of Michigan,
JOSEPH M. GASPER, in his individual
and official capacities, and KEYONN
WHITFIELD, in his individual capacity,

                                 DAVIS

                                 MAG. DAVID R. GRAND

     Defendants.

                                 **ORAL ARGUMENT
REQUESTED**

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Michigan State Police, Colonel Joseph Gasper, and Lieutenant

Keyonn Whitfield, through counsel, bring this motion under Fed. R. Civ. P. 56(a),

and ask this Court to enter an order dismissing Plaintiff's 42 U.S.C. § 1983, 42

U.S.C. § 2000, the Elliott-Larsen Civil Rights Act, and Article 1, § 26 of the

Michigan Constitution claims for the reasons set forth in the accompanying brief.

Counsel for the Defendants sought concurrence in filing this motion on November

29, 2021, and concurrence was not granted.

                                Respectfully submitted,

                                Dana Nessel
                                Attorney General

                                */s/ Kyla L. Barranco*

Kyla L. Barranco (P81082)
Mark E. Donnelly (P39281)
Adam R. de Bear (P80242)
Assistant Attorneys General
Attorneys for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
Dated:  November 30, 2021                barrancok@michigan.gov

## CERTIFICATE OF SERVICE (E-FILE)

I certify that on November 30, 2021, I electronically filed the above document with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

A courtesy copy of the aforementioned document was sent via UPS Next Day Air and directed to:

Judge Stephanie Dawkins Davis
600 Church St, Rm 112
Flint, MI 48502

/s/ *Kyla L. Barranco*
Kyla L. Barranco
Assistant Attorney General
Attorney for Defendants

2020-0302494-A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LARISSA LAMAY,

     Plaintiff,

                       No. 4:20-cv-12617

v

MICHIGAN STATE POLICE, an          HON STEPHANIE DAWKINS
agency of the State of Michigan,      DAVIS
JOSEPH M. GASPER, in his individual
and official capacities, and KEYONN   MAG. DAVID R. GRAND
WHITFIELD, in his individual capacity,

     Defendants.

_____

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Mark E. Donnelly
Kyla L. Barranco
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
barrancok@michigan.gov
P39281
P81082

Dated:  November 30, 2021

# TABLE OF CONTENTS

Page

Table of Contents ......................................................................................... i

Concise Statement of Issues Presented .................................................... vi

Controlling or Most Appropriate Authority.............................................. vi

Statement of Facts .........................................................................................1

    The Metro North Assistant Post Commander Position ...................................1

    Metro North Post Sergeants Meeting ........................................................3

    MSP's Diversity Goals .................................................................................4

    Professional Standards Investigation..........................................................5

Standard of Review ........................................................................................6

Argument.........................................................................................................7

I.    LaMay does not allege viable claims for reverse-race discrimination against Whitfield, Gasper, or the MSP under either § 1983, the ELCRA, or the Michigan Constitution.............................................................7

    A.    LaMay cannot demonstrate a prima facie case of reverse-race discrimination under § 1983 or the ELCRA against Gasper, Whitfield, or MSP. ...............................................................................8

        1.    MSP, an overwhelmingly white department, is not that unusual employer who discriminates against the majority........8

        2.    LaMay withdrew her application, and thus, did not apply for the assistant post commander position..............................11

        3.    Defendants had a legitimate, nondiscriminatory reason for selecting Baines for the promotion. ...................................15

    B.    LaMay's § 1983 race discrimination claim against Gasper fails because she cannot demonstrate the requisite personal involvement................................................................................... 16

II.     LaMay does not allege viable claims for reverse-race discrimination
        or sexual orientation discrimination against the MSP under Title VII. ........19

        A.     MSP did not take an adverse action employment action against
               LaMay...............................................................................................19

        B.     Race was not a motivating factor in the hiring process for the
               assistant post commander position. ......................................................20

        C.     Sexual orientation was not a motivating factor in the hiring
               process for the assistant post commander position. ............................21

III.    LaMay's § 1983 and ELCRA sex discrimination claims against
        Whitfield and MSP must be dismissed...........................................................23

IV.     Gasper and Whitfield are entitled to qualified immunity for LaMay's
        § 1983 claims because no constitutional rights were violated, and the
        alleged rights at issue are not clearly established. .........................................24

Conclusion and Relief Requested ...........................................................................25

Certificate of Service (e-file) ..................................................................................26

# INDEX OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................16

*Bell v. Civil Serv. Comm'n*,
    No. 347929, 2020 WL 4036606 (Mich. Ct. App. July 16, 2020) ........................10

*Elkins v. Richardson-Merrell, Inc.*,
    8 F.3d 1068 (6th Cir. 1993) .................................................................................18

*Estate of Carter v. City of Detroit*,
    408 F.3d 305 (6th Cir. 2005) ...............................................................................24

*France v. Lucas*,
    836 F.3d 612 (6th Cir. 2016) ..................................................................................6

*Golden v. Town of Collierville*,
    167 F. App'x 474 (6th Cir. 2009) ...........................................................................8

*Gutzwiller v. Fenik*,
    860 F.2d 1317 (6th Cir. 1988) ...............................................................................7

*Hall v. Nat'l Forensic Sci. Tech. Ctr., Inc.*,
    Nos. 326048, 328482, 2016 WL 4203496 (Mich. Ct. App. Aug. 9, 2016) .........10

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................................24

*Jennings v. Cty. of Monroe*,
    630 F. App'x 547 (6th Cir. 2015) .........................................................................12

*Jutrowski v. Twp. of Riverdale*,
    904 F.3d 280 (3d Cir. 2018) .................................................................................18

*Leadbetter v. Gilley*,
    385 F.3d 683 (6th Cir. 2004) ...............................................................................12

*Lopez v. Am. Family Ins. Co.*,
  618 F. App'x 794 (6th Cir. 2015)..........................................................................22

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ....................................................................................7, 8

*Miller v. Calhoun Cty.*,
  408 F.3d 803 (6th Cir. 2005).............................................................................16

*Morris v. Family Dollar Stores of Ohio, Inc.*,
  320 F. App'x 330 (6th Cir. 2009)........................................................................9

*Morris v. Oldham County Fiscal Court*,
  201 F.3d 784 (6th Cir. 2000).............................................................................6

*Nelson v. City of Flint*,
  136 F. Supp. 2d 703 (E.D. Mich. 2001) .................................................................7

*Ondricko v. MGM Grand Detroit, LLC*,
  689 F.3d 642 (6th Cir. 2012).........................................................................7, 23

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ...................................................................................24

*Pineda v. Hamilton Cty.*,
  977 F.3d 483 (6th Cir. 2020)............................................................................18

*Saucier v. Katz*,
  533 U.S. 194 (2001) ...................................................................................24

*Shehee v. Luttrell*,
  199 F.3d 295 (6th Cir. 1999)............................................................................16

*Silberstein v. City of Dayton*,
  440 F.3d 306 (6th Cir. 2006)............................................................................24

*Wexler v. White's Fine Furniture, Inc.*,
  317 F.3d 564 (6th Cir. 2003)............................................................................19

*White v. Baxter Healthcare Corp.*,
  533 F.3d 381 (6th Cir. 2008)............................................................ 7, 19, 22, 23

*Zambetti v. Cuyahoga Community College,*
314 F.3d 249 (6th Cir. 2002) ........................................................................ 9

**Statutes**

42 U.S.C. § 1983 ......................................................... 1, 7, 8, 17, 18, 23, 24, 25

42 U.S.C. § 2000, *et seq.* ............................................................................ 1, 19

Mich. Comp. Laws § 37.2101, *et seq.* ......................................... 1, 7, 8, 10, 23

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................. 6, 25

**Constitutional Provisions**

Mich. Const. art. I, § 26 ................................................................................. 1

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Under § 1983 and the ELCRA, a plaintiff has the burden of showing a prima facie case of race and gender discrimination, and, only if he can, does the burden shift to the defendant to show a legitimate, nondiscriminatory reason for its action before shifting back to the plaintiff to show pretext.  LaMay cannot establish a prima facie case of discrimination.  Should this Court dismiss LaMay's race and gender discrimination claims?

2.  Liability cannot be imposed under 42 U.S.C. § 1983 on a theory of respondeat superior.  Gasper was not personally involved in the failure to promote LaMay.  Should this Court dismiss LaMay's § 1983 discrimination claim against Gasper?

3.  Under Title VII mixed-motive claims, a plaintiff must produce evidence that the defendant took an adverse action against the plaintiff, and the plaintiff's protected characteristic was a motivating factor in the employment decision.  LaMay can show neither an adverse employment action nor that her failure to obtain the promotion was motivated by her sexual orientation or race. Should this Court dismiss LaMay's Title VII discrimination claims?

4.  Government officials are entitled to qualified immunity where no constitutional violation took place or where the violation was not clearly established at the time it took place.  Gasper and Whitfield did not violate LaMay's constitutional rights, and LaMay cannot point to relevant clearly established law with respect to her § 1983 claims.  Should this Court dismiss the § 1983 claim against Gasper and Whitfield?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:   *Zambetti v. Cuyahoga Comm. Coll.*, 314 F.3d 249 (6th Cir. 2002);
*Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2004);
*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008);
*Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012);
*Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

## STATEMENT OF FACTS

This case arises from the failure of Plaintiff Larissa LaMay, a white lesbian, to obtain the assistant post commander position at the Metro North Post of the Michigan State Police ("MSP").  LaMay alleges that she was not promoted because of her race and sexual orientation.  But LaMay withdrew her application before her interview when she was told it would need to be conducted virtually if she could not attend in-person on the scheduled date.  Her amended complaint names the MSP, Colonel Joseph Gasper, and Lieutenant Keyonn Whitfield and alleges six counts:  (1) reverse-race discrimination under 42 U.S.C. § 1983 (against Gasper and Whitfield); (2) sex discrimination under § 1983 (against Whitfield); (3) reverse-race discrimination under the Elliott-Larsen Civil Rights Act ("ELCRA") Mich. Comp. Laws § 37.2101, *et seq*., and article I, § 26 of the Michigan Constitution (against Gasper, Whitfield, and MSP); (4) sex discrimination under the ELCRA (against MSP and Whitfield); (5) sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* (against MSP); and (6) sex discrimination under Title VII (against MSP).

**The Metro North Assistant Post Commander Position**

In January 2020, the assistant post commander position opened at the MSP's Metro North Post.  LaMay, a sergeant at the Metro North Post applied and was given an interview spot for February 6, 2020.  (Ex. A, LaMay Dep., 80; Ex. B,

1

Email Chain.)  At the time of the positing, LaMay had been with the MSP for 22 years and had an associate's degree.  (Ex. A, 6, 8.)

Upon learning about the interview date, LaMay informed the hiring manager, Whitfield, that she would be out of town on a cruise and would be unable to attend the interview and requested an alternative, later date.  (Ex. B; Ex. C, Whitfield Dep., 58.)  After conferring with his supervisor, Inspector Joe Brodeur, and Human Resources, Whitfield indicated that "the interview date [would] not be adjusted."  (Ex. B.)  As explained at his deposition, Whitfield had "never delayed any interviews in the past" and wished to fill the position as soon as possible.  (Ex. C, 61.)  However, Whitfield explained to LaMay that she could "interview via Facetime or Skype."  (*Id.*)  LaMay declined the accommodation and opined that the "FaceTime or Skype option for an interview put[ ] [her] at a considerable disadvantage as compared to the other candidates that [would] have an opportunity for a face to face interview."  (*Id.*)  LaMay subsequently withdrew her application for the assistant post commander position.

Ultimately, after interviewing two candidates, then-Sergeant Kelly Baines, an African-American female, obtained the promotion.[1]  At the time of her promotion to lieutenant, Baines had been with the MSP for 22 years and had a

---

[1]  Sergeant William Dawson and Baines were the two candidates interviewed. Whitfield scored Baines at 75 and Dawson at 73.  Baines' two-point advantage was attributed to her having a bachelor's degree.  (Ex. D, Selection Package.)

2

bachelor's degree.  (Ex. E, Baines Dep., 6.)  However, according to LaMay, Baines

was "pre-selected" because she was African-American.  (Am. Compl., ECF No.

16, PageID.85.)  Indeed, LaMay asserts that Whitfield met with Baines prior to

"the interview to prepare her."  (*Id.*)  Whitfield, however, explained that all

applicants are encouraged to discuss the position with the hiring manager.  (Ex. C,

54.)  He explained members are "taught to . . . reach out to the hiring managers for

any position that you are seeking[.]"  (*Id.* at 53.)  The purpose of such a meeting

"is to find out what the hiring manager is looking for out of the position"—"[j]ust

overall what the position entails and what you're looking for out of the . . .

applicant."  (*Id.* at 54.)  Boucher, the commander of the Professional Standards

Section, and Lt. Sarah Krebs both confirmed this practice.  (Ex. F, Boucher Dep.,

15–16; Ex. G, Krebs Dep., 28, 30.)  Baines also confirmed that nothing improper

occurred at her meeting with Whitfield.  (Ex. E, Baines Dep., 22–23.)  Indeed,

other candidates had reached out to Whitfield or met with other supervisors.

**Metro North Post Sergeants Meeting**

Months prior to the interview and selection process, Whitfield, an MSP

Metro North Post Commander, held a sergeants' meeting on November 20, 2019.

(ECF No. 16, PageID.84.)  During the meeting, Whitfield allegedly referred to a

presentation given by a gay trooper at the MSP Fall Forum, in which the trooper

discussed the "challenges faced by gay law enforcement officers."  (*Id.*)  Whitfield,

at the sergeants meeting, allegedly "negatively referred to the gay trooper at the Fall Forum" and "expounded 6-7 times on the oddity of a gay law enforcement officer." (*Id.*, PageID.84–85.)  According to LaMay, Whitfield's comments made her "extremely uncomfortable," and she believes his purported bias against her sexual orientation "tainted his decision to deny [her] the Metro North Assistant Post Commander position." (*Id.*, PageID.85.)

Whitfield maintains that his comments were misinterpreted.  (Ex. C, 14.)  He maintains that they were intended to communicate that "tides are changing" and that was "a positive thing for [the] Department." (*Id.* at 15.)  However, Whitfield was ultimately given a formal counseling memo because of his comments at the sergeants meeting and was directed to complete training, which included "EIO articles, academic programs, and webinars relevant to communication, difficult conversations, and LGBTQ awareness." (*Id.* at 29, 37.)

**MSP's Diversity Goals**

LaMay also contends that, in addition to her sexual orientation, she was discriminated against because of her status as a white member of MSP.  In particular, she cites to a February 6, 2019 Director's meeting at MSP headquarters—for which she was not present—at which Gasper allegedly "announced that the 'number one priority' is 'diversity' which was to be achieved by racial and gender preferences." (ECF No. 16, PageID.83–84.)  LaMay also

cites to the Spring Director's meeting on May 13, 2019, and Fall Forum on October 8, 2019—again, neither of which she was present for—at which Gasper allegedly reiterated the diversity goal. (*Id.*, PageID.84.) Ultimately, MSP has set forth a diversity goal in its Strategic Plan to achieve a "25% racial minority trooper *applicant* pool" and a "20% female trooper *applicant* pool." (Ex. H, Strategic Plan.) Significantly, however, while LaMay is a female, she is not a trooper, and thus, the diversity initiative does not apply to her.

**Professional Standards Investigation**

In April 2020, LaMay notified Human Resources of her suspicion that (1) Whitfield gave Baines an unfair advantage in the interview process, and (2) that she was denied an interview because of her sexual orientation. (Ex. I, Internal Affairs Final Disposition Report, MSP_000077.) Human Resources then filed a complaint on her behalf with the Professional Standards Section of MSP. (*Id.*) As to the purported unfair advantage, Professional Standards determined that the allegation was unfounded. In particular, it determined that:

> [T]he only thing proven was that F/Lieutenant Whitfield and Sergeant Baines had a conversation about the position, which was both appropriate and a wise move by Sergeant Baines. The notes believed by some personnel to be evidence of impropriety actually appear to disprove the allegation because they contain information unrelated to actual questions asked. [(*Id.*)]

As it relates to LaMay's discrimination allegation, Professional Standards determined that that allegation was also unfounded. It noted that LaMay "was

5

offered an interview by F/Lieutenant Whitfield and she made the choice not to interview." (*Id.*)  The investigation also showed that "Whitfield did not decide on his own not to offer her a different date to interview"; rather, "the decision was largely made for him after he consulted with his supervisor and HR staff, and the decision certainly complied with department procedure and past practice." (*Id.*) Finally, Professional Standards found that "[i]t also seemed entirely reasonable to not offer a separate date when a virtual interview was possible on the original date," and "[a]llowing one applicant extra time to prepare could be an unfair advantage for that applicant." (*Id.*)

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) provides that a court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  This Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).  When "the moving party has met its burden of production, the nonmoving party must by deposition, answers to interrogatories, and admissions on file show specific facts that reveal a genuine issue for trial." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000) (citation omitted).

6

## ARGUMENT

**I.     LaMay does not allege viable claims for reverse-race discrimination against Whitfield, Gasper, or the MSP under either § 1983, the ELCRA, or the Michigan Constitution.**

This Court's analysis in determining the merit of LaMay's claims for reverse-race discrimination under § 1983 and the ELCRA is the same. *Nelson v. City of Flint,* 136 F. Supp. 2d 703, 713 (E.D. Mich. 2001) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). Under each claim, LaMay bears the burden to establish a prima facie case of reverse-race discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under this framework and in the failure to promote context, LaMay has the burden of showing: (1) "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority;" (2) "that [she] applied and was qualified for a promotion;" (3) that [she] was considered for and denied the promotion;" and (4) "that the defendant treated differently employees who were similarly situated but were not members of the protected class."[2] *Golden v.*

---

[2] To the extent LaMay asserts that her ELCRA claim should be assessed under mixed-motive analysis outlined in *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008), she is mistaken. (ECF No. 16, PageID.91) While "the United States Supreme Court determined that a plaintiff in a Title VII action may make out a prima facie claim of discrimination in a mixed-motive case using either direct evidence or circumstantial evidence, Michigan courts continue to require that mixed-motive cases under ELCRA be established by direct evidence." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012) (citations omitted). LaMay does not allege direct evidence of discrimination, and

*Town of Collierville*, 167 F. App'x 474, 479 (6th Cir. 2009) (citations omitted).  If

the plaintiff makes this showing, the burden shifts to the defendant, who must

"offer evidence of a legitimate, non-discriminatory reason for the adverse

employment action."  *Id.*  A successful showing on the part of the defendant shifts

the burden back to the plaintiff to prove that the defendant's proffered reason was

"merely a pretext for discrimination."  *Id.* at 391–92.


A.    **LaMay cannot demonstrate a prima facie case of reverse-race discrimination under § 1983 or the ELCRA against Gasper, Whitfield, or MSP.**

LaMay cannot meet her prima facie case for three principal reasons:  (1) she

cannot show background circumstances to support her suspicion that MSP is that

unusual employer who discriminates against the majority; and (2) ultimately, she

did not apply for the promotion; rather, she withdrew her application for it.  Each

will be addressed in turn.


1.    **MSP, an overwhelmingly white department, is not that unusual employer who discriminates against the majority.**

Caselaw provides examples of what constitutes background circumstances

sufficient to satisfy the first prong of the modified prima facie test.  As explained

by the Sixth Circuit, "evidence of [the defendants'] unlawful consideration of race

---

thus, she "must satisfy the *McDonnell Douglas* burden-shifting framework based
on a single-motive theory."  *Id.*

as a factor . . . in the past justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 256 (6th Cir. 2002) (cleaned up). For example, in *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 340 (6th Cir. 2009), the Sixth Circuit held that sufficient background circumstances existed when a Hispanic manager replaced a Caucasian employee with a Hispanic employee. In *Zambetti v. Cuyahoga Community College*, the Sixth Circuit again concluded that sufficient background circumstances existed when an African American police chief favored the promotion of African Americans. 314 F.3d at 257.

The facts of this case do not show the requisite background circumstances to support LaMay's erroneous assertion that MSP is that unusual employer who discriminates against the majority. As a preliminary matter, it cannot be disputed that MSP's workforce overwhelmingly consists of white members. As of May 2020, MSP had 1,964 enlisted members, and 1,759 were white. (Ex. J, 05/16/2020 Strength Report, 3541.) In other words, MSP's enlisted membership is 89.5% white. (*Id*.) As it relates to lieutenants within MSP—the position LaMay claims she should have received—MSP is similarly homogenous. Of the 56 lieutenants in May 2020, 48 were white. (*Id*.) Thus, the lieutenant rank is 85.7% white. (*Id*.)

9

Moreover, there are minorities who have sued or maintained actions against MSP for race and gender discrimination.[3]   *See Hall v. Nat'l Forensic Sci. Tech. Ctr., Inc.*, Nos. 326048, 328482, 2016 WL 4203496 (Mich. Ct. App. Aug. 9, 2016) (affirming judgment against MSP for race discrimination under the Elliott-Larsen Civil Rights Act ("ELCRA")); *Bell v. Civil Serv. Comm'n*, No. 347929, 2020 WL 4036606 (Mich. Ct. App. July 16, 2020) (affirming grant of class certification in a case concerning African American male alleging violations of the ELCRA under both disparate impact and intentional discrimination theories).[4]

Finally, while LaMay cites to MSP's diversity initiative as evidence of the requisite background circumstances, what she fails to note is that it does not apply to her.  Indeed, while she maintains that "part of the MSP diversity initiative is to set aside 25% of the position within the MSP for minorities and 20% for female," (ECF No. 16, PageID.84), in actually, the performance metric is to achieve a "25%

---

[3] MSP maintains that it does not discriminate against anyone—whether they are a member of a minority class or majority class.

[4] Just last year, an African American female—the same MSP member McCormick alleges received more preferential treatment than he did—negotiated a two-million-dollar settlement of her lawsuit, which alleged, among other things, race, and gender discrimination.  *See* Elisha Anderson, *MSP pays out $2M to settle whistleblower lawsuit by former internal affairs boss* (May 12, 2020), https://www.freep.com/story/news/local/michigan/2020/05/12/lawsuit-michigan-state-police-twana-powell/3114844001/.

racial minority *trooper applicant* pool" and a "20% female *trooper applicant* pool." (Ex. H, emphasis added.)  LaMay is neither an applicant nor a trooper.

In sum, the circumstances of this case do not show that MSP is the unusual employer who discriminates against the majority.  Rather, MSP is largely made up of white members.  And any reference to MSP's attempt to diversify its *trooper applicant* pool has no bearing on whether it engages in discriminatory practices against those white members.  To the contrary, lawsuits by MSP's members and applicants show the opposite.  Dismissal is warranted on this ground alone.

### 2. LaMay withdrew her application, and thus, did not apply for the assistant post commander position.

To show a prima facie case of reverse-race discrimination, LaMay must also show that she applied and was qualified for the promotion.  But LaMay cannot satisfy this prong because she withdrew her application for the assistant post commander position.  Indeed, while she initially applied for the position and received notification that she would be interviewed, she ultimately withdrew her application when she was told that her interview date could not rescheduled but could be conducted remotely via Skype.  (ECF No. 16, PageID.86.)  Despite this accommodation, LaMay withdrew her application due to speculative wi-fi concerns as she was taking a cruise vacation.  This is fatal to her reverse-race discrimination claim.

11

*Leadbetter v. Gilley*, 385 F.3d 683, 693 (6th Cir. 2004), supports this conclusion.  There, the plaintiff brought a reverse-race discrimination claim when an African-American colleague was named Equity and Diversity Administrator and Vice President of Equity and Diversity.  *Id.*  In dismissing the plaintiff's claim, the Sixth Circuit explained that he "never applied to be Equity and Diversity Administrator or Vice President of Equity and Diversity."  *Id.*  The Sixth Circuit also rejected the plaintiff's attempt to argue that he had no opportunity to do so and that his application would have been futile where he "pointed to no evidence supporting his assertion that his application for the position would have been fruitless."  *Id.*

Any attempt to argue that LaMay's participation in the interview process would have been fruitless should similarly be rejected here.  To start, LaMay opines that "a Skype interview . . . would likely have been impossible on a cruise ship."  (ECF No. 16, PageID.86.)  LaMay offers nothing more than speculation on this point, and that is fatal to her discrimination claims.  *Jennings v. Cty. of Monroe*, 630 F. App'x 547, 555 (6th Cir. 2015) (explaining that a party cannot rely on "[c]onclusory allegations, speculation, and unsubstantiated assertions" to defeat a motion for summary judgment) (citation omitted).

LaMay's attempt to allege that an African-American candidate was pre-selected for the assistant post commander position also falls short.  For example, in

support of her allegation, LaMay maintains that the Whitfield "met with the pre-selected Black sergeant in advance of interviews to prepare her for the interview." (ECF No. 16, PageID.85.)  Whitfield, however, noted that while he did meet with Baines, this meeting "is open to everyone up until the point where [he] gives out the [position] competencies."[5]  (Ex. C, 54.)  In fact, he explained the department members are "taught to . . . reach out to the hiring managers for any position that you are seeking[.]"  (*Id.* at 53.)  The purpose of such a meeting "is to find out what the hiring manager is looking for out of the position"—"[j]ust overall what the position entails and what you're looking for out of the . . . applicant."  (*Id.* at 54.)

Boucher confirmed that this practice is common at MSP.  Boucher explained that he "would expect somebody to contact the hiring manager and have a discussion with them when they apply for a job."  (Ex. F, 16.)  He also noted that the interview questions "weren't finalized . . . until after th[e] meeting" between Baines and Whitfield and that Whitfield met with another candidate, William Dawson.  (*Id.* at 16, 17.)  Thus, he concluded that he did not "see anything . . . that was untoward . . . or [he] believe[d] was misconduct."  (*Id.*)

Krebs also testified about the meeting between Whitfield and Baines.  She noted that for "most hiring interviewers . . . the hiring interviewer will allow

_____

[5] Baines confirmed that her meeting with Whitfield took place before the competencies were announced.  (Ex. E, 19.)

candidate to reach out to them and discuss . . . what they want in a candidate and what they're looking for, so that would not be out of the norm for a hiring manager to talk to a candidate." (Ex. G, 28.)  Moreover, note taking at such a meeting did not concern her as she "would expect that if you were meeting with your hiring manager about an upcoming interview, that you would take notes." (*Id.* at 30.)

Baines' testimony also supports the conclusion that her meeting with Whitfield was proper.  She explained that the "department has always trained that it's a good idea, prior to putting in for a position, to meet with the hiring manager, to see what their expectation are for the position, and that was the reason that [she] wanted to speak with Lieutenant Whitfield." (Ex. E, 20.)  She further testified that she requested the meeting, and she and Whitfield discussed "what his expectation were of his 14's, the type of skills that he may want his 14's to possess, and whether or not [she] would be happy in that position[.]" (*Id.* at 22.)  Baines also explained that another MSP member, Sergeant McCaul, "had made a phone call to request to speak to Lieutenant Whitfield." (*Id.* at 23.)

In sum, it is common practice within the MSP for members to meet with hiring managers to discuss an open position.  Baines, in her due diligence, took advantage of this practice, along with two other potential candidates.  Thus, Baines was not pre-selected for the position; rather, she sought it out, completed the interview (unlike LaMay), and received it through proper channels.  LaMay had

14

similar opportunities but chose not to take advantage of them.  Considering these

facts, LaMay cannot satisfy the second prong of her prima facie case and her

discrimination claims should be dismissed.

### 3.    Defendants had a legitimate, nondiscriminatory reason for selecting Baines for the promotion.

Even if LaMay can demonstrate a prima facie case of discrimination, MSP

has a nondiscriminatory, legitimate business reason for selecting Baines:  she was

the best candidate who interviewed for the position.  As a preliminary matter, as a

explained above, LaMay did not interview for the position, and thus, Defendants

could not have chosen her for assistant post commander.  And the decision to offer

LaMay a Skype or FaceTime interview was not made for discriminatory reasons.

Rather, "the decision . . . complied with department procedure and past practice"

and it was "entirely reasonable to not offer a separate date when a virtual interview

was possible on the original date," especially where "[a]llowing one applicant

extra time to prepare could be an unfair advantage for that applicant."  (Ex. I.)

Moreover, Baines received the highest score of the candidates interviewed as

she scored two points higher than Dawson due to her bachelor's degree.[6]  (Ex. D.)

Moreover, her "background and experiences show[ed] her ability to be effective

---

[6] To the extent Baines had the interview questions provided to her as LaMay alleges, one can assume that she would have received *much* higher scores than Dawson.

when managing people and tasks," her "interview revealed a strong understanding of post operations and the inspection process," and she had "taken on multiple administrative roles and responsibilities during the inspection prep process, while successfully managing her squad of six troopers." (*Id.*)  As demonstrated by her interview, she was the best candidate interviewed, and thus, MSP had a legitimate, nondiscriminatory reason for its decision to promote her.

**B.    LaMay's § 1983 race discrimination claim against Gasper fails because she cannot demonstrate the requisite personal involvement.**

LaMay's § 1983 race discrimination claim against Gasper must be dismissed for an additional reason.  Case law is clear:  section "1983 liability can[ ] be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005).  Thus, a plaintiff must, at a minimum, "show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (explaining that the mere fact that a supervisor is in a position of authority, or he was aware of illegal conduct after the fact, does not allow the imposition of liability); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[P]urpose rather knowledge is required . . . for an official charged with violations arising from his or her superintendent responsibilities.").

16

LaMay contends that Gasper "was intimately involved in creating and implementing/enforcing the MSP's new and improved racial and gender preferences," and thus, he should be held liable under § 1983 for race discrimination.  (ECF No. 16, PageID.87.)  She clarified this allegation at her deposition when she testified as follows:

> I believe that Gasper set the tone with his anti -- or his diversity policy and pushing forward the agenda.  And therefore I think this is a direct -- direct result of the policy that he has put in place. In saying that the State Police is too white and too male, I think that he has set the tone.  [(Ex. A, 100.)]

And while LaMay was not at the Fall Forum where Gasper allegedly set forth this policy, she asserts that it was Gasper's "tone that he put forth at that fall forum" which "was the foundation for this discriminatory policy or procedure that Lieutenant Whitfield has utilized." (*Id.* at 114–15.)

Notably, however, because LaMay was not at the fall forum, she admitted that she was unaware of what specifically was communicated there.  For example, she testified as follows:

> Q. Can you point . . . me to a specific policy or agenda of Colonel Gasper's that you say facilitated Keyonn Whitfield in his discrimination against you?
>
> ***
>
> A.  Again, I wasn't at the fall forum so I can't . . . I don't know what the specific verbiage was so I can't give specifics.  [(*Id.* at 115.)]

17

Moreover, LaMay admitted that she has no direct knowledge that Gasper had any role in selecting candidates in the Second District, scheduling interviews, or providing her with an alternative interview date. (*Id.* at 103.)  And this makes sense.  Gasper—the director of the MSP—is not involved in the selection of assistant post commanders.  Indeed, there is no evidence that Gasper even knew who applied for the assistant post commander position, let alone that LaMay was offered a Skype interview.

LaMay's conjecture regarding Gasper's involvement is insufficient to survive summary judgement.  Under § 1983, a "plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial."  *Pineda v. Hamilton Cty.*, 977 F.3d 483, 491 (6th Cir. 2020) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018)) (quotation marks omitted).  Indeed, "to survive a summary-judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence 'to allow a reasonable juror to conclude that the [plaintiff's] position *more likely than not* is true.' "  *Id.* (quoting *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1073 (6th Cir. 1993)).  LaMay's claim against Gasper falls woefully short in this regard and, thus, dismissal is warranted.

18

## II.    LaMay does not allege viable claims for reverse-race discrimination or sexual orientation discrimination against the MSP under Title VII.

LaMay also brings mixed-motive claims for reverse-race and sexual orientation discrimination against the MSP under Title VII.  "A mixed-motive analysis applies to cases 'where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives.' " *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003) (citation omitted).  To survive a motion for summary judgment under the mixed-motive framework, a plaintiff must produce evidence to convince a jury that:  "(1) the defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was *a* motivating factor" for the defendant's adverse employment action."  *White*, 533 F.3d at 400 (citing 42 U.S.C. § 2000e–2(m)) (emphasis added).  Here, LaMay cannot demonstrate that MSP had an illegitimate discriminatory animus in filling the assistant post commander position.

### A.    MSP did not take an adverse action employment action against LaMay.

For the reasons discussed in Part II.A.2 and incorporated here, LaMay cannot demonstrate that MSP took an adverse employment action against her. While LaMay initially applied for the assistant post commander position, she withdrew her application upon being informed that she could not reschedule it and would need to attend virtually.  While this may not have been her preference, it

19

does not demonstrate that staying in the hiring process would have been futile. Nor has she demonstrated that Baines was "pre-selected" for the position. On this basis alone, LaMay's Title VII reverse-race and sexual orientation discrimination claims should be dismissed.

### B.    Race was not a motivating factor in the hiring process for the assistant post commander position.

Even if this Court were to determine that MSP took an adverse employment action against LaMay, race was not a motivating factor in that employment action. Take, for example, the diversity initiative cited by LaMay. (ECF No. 16, PageID.83–84.) Specifically, LaMay maintains that on February 6, 2019, Gasper "convened a Director's Meeting at MSP headquarters where he announced that the 'number one priority' is 'diversity' which was to be achieved by racial and gender preferences." (*Id.*, PageID.83.) Then, on May 13, 2019, Gasper allegedly again emphasized the importance of diversifying MSP. (*Id.*, PageID.84.) And on October 8, 2019, Gasper spoke about diversity and "revealed that as part of the Affirmative Action Directive the MSP was to set aside 25% of the positions within the MSP for minorities and 20% for females." (*Id.*) Indeed, one of the many overall goals within the Strategic Plan for 2020-2022 is "Diversity, Equity, & Inclusion." (Ex. H, Strategic Plan.) But the relevant performance measure within that goal is to achieve a "25% racial minority trooper *applicant* pool" and a "20%

20

female trooper *applicant* pool." (*Id.*, emphasis added.)  Thus, the Strategic Plan

does not contemplate a diversity quota among its already existing members, but a

goal to have a more diverse *applicant* pool by December 2022.  (*Id.*)  LaMay has

long surpassed the position of trooper.  Thus, MSP's diversity initiative had no

impact on her, and it was not a reason she did not obtain the promotion at issue.

Furthermore, LaMay baldly claims that MSP was "concerned" that it "did

not have enough Black command officers in the Second District which . . . includes

the Metro North Post."  (ECF No. 16, PageID.85.)  Significantly, however,

Brodeur was unaware of any such concern.  (Ex. F, 13.)  LaMay herself does not

appear to be aware of such a concern either as she testified as follows:

> Q. Did you know that Colonel Gasper had his major, at that time
> Zarotney, call the head of the Second District, Captain Deasy, and tell
> him he needed more diversity in the Second District?
>
> ***
>
> A. No, I did not know that.  [(Ex. A, 121.)]

And Deasy has denied these allegations.  (Ex. K, 46, 47, 50.)  Thus, there is no

non-speculative, admissible evidence to support LaMay's allegations.

### C.    Sexual orientation was not a motivating factor in the hiring process for the assistant post commander position.

LaMay also contends that MSP impermissibly used her sexual orientation as

a motivating factor in the hiring process.  Not so.

LaMay's sex discrimination claim is premised on a Metro North Post sergeants meeting that took place in November 2019.  (ECF No. 16, PageID.83.) At the meeting, Whitfield allegedly negatively referred to a presentation given by a gay trooper.  (*Id.*, PageID.84.)  In particular, "he expounded 6-7 times on the oddity of a gay law enforcement officer."  (*Id.*, PageID.85.)  LaMay asserts that these comments made her "extremely uncomfortable."  (*Id.*)

Despite Whitfield's purported comments, LaMay fails to demonstrate any causal connection between these statements and her failure to obtain the assistant post commander position.  Significantly, although a plaintiff need not "eliminate or rebut all the possible legitimate motivations of the defendant," *White*, 533 F.3d at 401, a mixed motive claim "does require *some* evidence of discriminatory bias that has some connection to the adverse employment action." *Lopez v. Am. Family Ins. Co.*, 618 F. App'x 794, 800 (6th Cir. 2015).

Causation is absent here.  While Whitfield was one of the decision-makers for the assistant post commander hiring process, Boucher testified that the discretion to adjourn interviews "varies by hiring manager."  (Ex. F, 25.)  And Whitfield testified that it was his practice to "never delay[ ] any interviews in the past because someone was on vacation or unable to interview for whatever reason."  (Ex. C, 61.)  In fact, he explained that he has never moved a scheduled interview despite "conduct[ing] many, many, many hiring interviews or

22

promotional interviews." (*Id.*)  Considering this fact, it would take an  illogical leap to conclude that Whitfield's refusal to reschedule LaMay's interview is causally connected to his alleged insensitive remarks.  Thus, LaMay's claim for sexual orientation discrimination under Title VII should be dismissed.

### III.   LaMay's § 1983 and ELCRA sex discrimination claims against Whitfield and MSP must be dismissed.

LaMay asserts that both Whitfield and MSP discriminated against her based on sexual orientation in violation of § 1983 (Whitfield) and the ELCRA (Whitfield and MSP).  As with her race discrimination claims, LaMay maintains that her sexual orientation was "at least a factor" in her inability to obtain the assistant post commander position.

As explained above, in a mixed-motive analysis the "ultimate question is whether [the plaintiff] presented evidence, direct and circumstantial, from which a reasonable jury could logically infer" that sexual orientation was a "motivating factor[ ]" in the adverse employment action.  *Ondricko*, 689 F.3d at 649.  Thus, LaMay must demonstrate that (1) Defendants took an adverse employment action against her, and (2) that sex was a motivating factor of the employment decision. *White*, 533 F.3d at 400.  For the reasons discussed in Parts II.A and II.C and incorporated here, LaMay cannot meet this burden with respect to her sex discrimination claims under § 1983 or the ELCRA.

23

**IV.    Gasper and Whitfield are entitled to qualified immunity for LaMay's §
1983 claims because no constitutional rights were violated, and the
alleged rights at issue are not clearly established.**

In order to prevail on her claims brought pursuant to § 1983, LaMay must

overcome the defense of qualified immunity, which shields government officials

from "liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In determining

whether Gasper and Whitfield are shielded from civil liability by qualified

immunity, this Court employs a two-step analysis:  "(1) whether, considering the

allegations in a light most favorable to the party injured, a constitutional right has

been violated, and (2) whether that right was clearly established." *Estate of Carter*

*v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005), citing *Saucier v. Katz,* 533

U.S. 194, 201 (2001).  Courts may exercise their sound discretion in deciding

which of the two prongs should be addressed first in light of circumstances in the

particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  But the

burden is on LaMay to show that Gasper and Whitfield are not entitled to qualified

immunity. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

Gasper and Whitfield are entitled to qualified immunity on both prongs.

First, as explained in Part I, LaMay cannot demonstrate that constitutional

violations took place.  And even if she could, her claims fail on the "clearly

24

established" prong of the analysis as there are no cases from the U.S. Supreme

Court or any Court of the Sixth Circuit that hold either that setting a goal to

diversify or that offering a virtual interview over an in-person violates the

Constitution.  There is likewise no existing precedent or established authority that

would have made it clear to Gasper or Whitfield that they could be subjected to

money damages liability under § 1983 by taking any of the actions attributed to

them in the complaint.  Thus, LaMay cannot carry her heavy burden in

demonstrating violation of a "clearly established" right, and Gasper and Whitfield

are entitled to qualified immunity.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants ask this Court to dismiss all claims

against them under Fed. R. Civ. P. 56(a) and that this action be dismissed with

prejudice.

<div style="margin-left:50%">

Respectfully submitted,

/s/ *Kyla L. Barranco*
Kyla L. Barranco
Assistant Attorney General
Attorney for Defendants
P81082

</div>

Dated:  November 30, 2021

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on November 30, 2021, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

A courtesy copy of the aforementioned document was sent via UPS Next Day Air

and directed to:

> Judge Stephanie Dawkins Davis
> 600 Church St, Rm 112
> Flint, MI 48502

> /s/ *Kyla L. Barranco*
> Kyla L. Barranco (P81082)
> Assistant Attorney General
> Attorney for Defendants

2020-0302494-A