UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LARISSA LaMAY,

     Plaintiff,

                        No. 5:20-cv-12617

v

                        HON. JUDITH E. LEVY

MICHIGAN STATE POLICE, an
agency of the State of Michigan,    MAG. DAVID R. GRAND
JOSEPH M. GASPER, in his
individual and official capacities,
and KEYONN WHITFIELD, in his
individual capacity,

     Defendants.

---

| James K. Fett (P39461) | Kyla L. Barranco (P81082) |
|---|---|
| Fett & Fields PC | Adam R. de Bear (P80242) |
| Attorney for Plaintiff | Assistant Attorneys General |
| 407 N Main St, 2nd Floor | Attorneys for Defendants |
| Ann Arbor, MI 48104 | State Operations Division |
| 734.954.0100 | P.O. Box 30754 |
| jim@fettlaw.com | Lansing, MI 48909 |
|  | 517.335.7573 |
|  | barrancok@michigan.gov |
|  | debeara@michigan.gov |

---/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO SUPPLEMENT SUMMARY JUDGMENT RECORD**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   In deciding motions for summary judgment, courts may only consider evidence that will be substantively admissible at trial.  Here, Plaintiff seeks to supplement the summary judgment record with declarations consisting of unsupported speculation regarding another person's knowledge and hearsay that does not fall within any exception or exclusion.  Should Plaintiff's motion to supplement be denied?

2.   Under the sham-affidavit rule, courts may disregard affidavits submitted by parties where the testimony in the affidavit either directly contradicts or is in tension with prior sworn testimony.  Here, Plaintiff has submitted a declaration that contradicts her sworn deposition testimony in an effort to create a sham fact issue.  Should Plaintiff's motion be denied with respect to her proffered declaration?

3.   Under 28 U.S.C. § 1746, a person may submit an unsworn declaration in response to a summary judgment motion so long as the declaration complies with the statute.  Here, Plaintiff offers her own unsworn declaration, but the declaration is neither signed nor dated.  Should Plaintiff's motion to supplement be denied with respect to her proffered declaration?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*: *Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*,
            106 F.3d 135 (6th Cir. 1997).
            Fed. R. Evid. 602.
            Fed. R. Evid. 801.
            *Boykin v. Fam. Dollar Stores of Michigan, LLC*,
            3 F.4th 832 (6th Cir. 2021).
            28 U.S.C. § 1746.
            *Reeves v. Sanderson Plumbing Prod., Inc.*,
            530 U.S. 133 (2000).

## STATEMENT OF FACTS

The salient facts and procedural history are set forth in
Defendants' motion for summary judgment, *see* ECF No. 21,
PageID.138–143, and are incorporated by reference here under Fed. R.
Civ. P. 10(c).

During the hearing on Defendant's motion for summary judgment,
Plaintiff D/Sergeant Larissa LaMay's counsel was asked to identify
record evidence showing that F/Lieutenant Keyonn Whitfield knew she
was gay.  LaMay's counsel was not able to identify such evidence but
represented that he had declarations from LaMay and Sergeant
Michael Zarate that could establish such knowledge.  Those
declarations are at issue in the instant motion to supplement.

To summarize, La May's declaration, which is not signed or dated,
offers the following statements:

- LaMay *believes* Whitfield's claim regarding his lack of
  knowledge is false;

- Several unnamed command officers told LaMay that
  there was "zero possibility" Whitfield did not know she
  was gay; and

- Zarate told LaMay that Lieutenant Marcus Trammel told
  him that he told Whitfield that LaMay was gay after the
  November 2019 sergeants meeting.  [See ECF No. 30-1,
  PageID.645–646.]

1

Similarly, Zarate's declaration, which was signed but is dated after the close of discovery, sets forth the following statements:

- Zarate claims "[t]here is no way" that Whitfield did not know LaMay is gay; and

- Trammel told Zarate that he told Whitfield LaMay was gay after the November 2019 sergeants meeting.  [ECF No. 30-2, PageID.647–648.]

Ultimately, LaMay's motion should be denied as both declarations contain speculation and inadmissible hearsay and LaMay's declaration directly contradicts her previous sworn testimony and does not comply with 28 U.S.C. § 1746.  But if the Court does grant LaMay's motion, it should also consider the remainder of the relevant record evidence which, Defendants maintain, shows that Whitfield was unaware of LaMay's sexual orientation.

## ARGUMENT

## I.   LaMay's motion to supplement the summary judgment record should be denied

At least three reasons exist for this Court to deny Plaintiff's motion to supplement the summary judgment record.  First, the proffered declarations are not admissible, either in form or in substance.  Second, LaMay's declaration is contrary to her prior sworn

testimony and, therefore, should be rejected under the sham-affidavit rule.  And third, LaMay's declaration is neither signed nor dated and therefore does not comply with 28 U.S.C. § 1746.

### A.    The statements contained in the two declarations constitute inadmissible hearsay.

Fed. R. Civ. P. 56(c)(4) provides that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Indeed, "[t]he proffered evidence need not be in admissible *form,* but its *content* must be admissible."  *Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997).  What this means with respect to written testimony, such as the declarations at issue here, is that written testimony may "assist a plaintiff in surviving a motion for summary judgment, even if the [written testimony] itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact."  *Id*. Accordingly, the declarations LaMay proffers here, must be reviewed to see whether substituted oral testimony would be admissible at trial.

3

Here, no substituted oral testimony will be admissible at trial and

therefore neither declaration should be considered.

### 1.   Zarate's declaration consists of conclusory allegations, speculation, and hearsay.

The statements contained in Zarate's declaration can be

summarized as follows:

- There is no way Whitfield was unaware LaMay was gay;
- Trammel told Zarate that he told Whitfield that LaMay was gay after the November 19, 2019 sergeants' meeting;
- All veteran members of the Metro North Post were aware that LaMay was gay.

(See ECF No. 30-2, PageID.647–648.)

As for the first and third bullet-pointed statements, Fed. R. Evid.

602 provides that "[a]witness may testify to a matter *only if evidence is*

*introduced sufficient to support a finding that the witness has personal*

*knowledge of the matter*."  (Emphasis added).  And from the plain

language of these statements, it is clear that Zarate is testifying as to

the personal knowledge of other State Police employees.  Such

testimony falls squarely within the category of speculation and is

therefore inadmissible in evidence.  See, e.g., *Gooden v. City of Memphis*

*Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) ("Conclusory

allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  Stated differently, "[t]estimony regarding the knowledge of another person based merely upon speculation is insufficient to demonstrate a genuine issue of material fact." *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 562 (7th Cir. 2015); *see also Jenkins v. Heintz*, 124 F.3d 824, 830–831 (7th Cir. 1997) (rejecting testimony of an opposing party's knowledge as "too speculative").

As for the second bullet-pointed statement, Zarate's recounting of a conversation he had with Trammel about a conversation Trammel had with Whitfield, is hearsay as defined under Fed. R. Evid. 801. Further, the statement does not fall under the exclusion set forth in Rule 801(d)(2)(D) which excludes from the definition of hearsay "statement[s] offered against an opposing party" that were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]"  And because this statement contains two levels of hearsay (i.e., Trammel's out-of-court statement to Whitfield and Trammel's out-of-court statement to Zarate), "each

5

separate statement must either be excluded from the hearsay definition or fall within a hearsay exception." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012). Neither statement can be excluded from the definition of hearsay.

The Sixth Circuit has explained that "Rule 801(d)(2)(D) is designed to bind the employer where one of its managerial employees makes a statement *within the scope of the employee's duties as a manager*." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005). To this end, "[o]utside evidence sufficient to satisfy Rule 801(d)(2)(D)'s scope requirement could come from the circumstances surrounding the statement, such as the identity of the speaker or the context in which the statement was made." *Back*, 694 F.3d at 578. Here, even if Trammel's statement to Whitfield was made within the scope of employment, LaMay has not provided the necessary foundation to show that Trammel's alleged statement to Zarate was made within the scope of Trammel's employment with the State Police. In fact, Zarate's declaration does not even attribute a direct quote to Trammel. (*See* ECF No. 30-2, PageID.648.)

6

In the end, a review of Trammel's job duties shows that his alleged, after-the-fact statement to Zarate was not made within the scope of his employment relationship with the State Police. (See Ex. A, Lieutenant 14 Job Specification.[1]) And because Trammel's alleged statement to Zarate was not made within the scope of his employment with the State Police, the statement is not excluded from the definition of hearsay under Rule 801(d)(2)(D) and, thus, cannot be considered on summary judgment.

### 2. Similarly, the statements contained in LaMay's declaration consist of speculation and hearsay.

In her declaration, LaMay makes the following bullet-pointed statements:

- LaMay *believes* Whitfield knew she is gay because she "has been openly gay since [she] joined the MSP[;]" she has known and worked with Whitfield for the majority of her 22-year career; Whitfield has been in her office where she has pictures of her family; and all veteran members of the Metro North Post that she knows are aware of her sexual orientation.

---

[1] Arguably, Trammel's alleged statement to Whitfield may fall within the duty of "[e]nsur[ing] proper . . . conditions of employment are maintained[,]" (Ex. A, p. 1), but Trammel's recounting to Zarate of his conversation with Whitfield does not.

- LaMay "spoke to several command officers who told me that there was zero possibility that [ ] Whitfield was unaware that I was gay."
- Zarate told LaMay that Trammel told him that he told Whitfield that LaMay was gay.

(ECF No. 30-1, PageID.645–646.)

The first bullet-pointed statement is inadmissible testimony regarding the knowledge of another person for the same reasons as set forth above in Part I.A.1.  And although LaMay provides testimony in support of her belief that Whitfield was aware of her sexual orientation, it still amounts to nothing more than a guess as to Whitfield's knowledge.  For this reason, LaMay's statement regarding her belief is not based on personal knowledge and, therefore, is inadmissible under Fed. R. Evid. 602.

The same reasoning applies to LaMay's representation of the out-of-court statements made by "several command officers."  (See ECF No. 30-1, PageID.646.)  Put simply, LaMay's statements are hearsay under Rule 801 as she has not provided any foundation from which this Court determine whether her conversation with the "several command officers" were made within the scope of their employment.  But even if those statements could be excluded from the definition of hearsay under

8

Rule 801(d)(2)(D), they would be speculative and not based on personal knowledge.  Accordingly, these out-of-court statements are inadmissible and not appropriate for consideration on summary judgment.

The third bullet-pointed statement is inadmissible for the same reasons as Zarate's recounting of his conversation with Trammel is inadmissible.  The only difference is that this statement in LaMay's declaration contains a third level of hearsay, i.e., Zarate's out-of-court statement to LaMay.  And similarly, LaMay has failed to establish any foundation to show that Zarate's statement to her was made within the scope of his employment relationship with the State Police.  (*See also* Ex. B, State Police Sergeant Job Specification, pp. 1–3.)  In fact, the circumstances she has provided show that Zarate's statement was not made within the scope of his employment.  Specifically, LaMay explains that her conversation with Zarate took place on "December 13 or 14, 2021." (ECF No. 30-1, PageID.646.)  Stating the obvious, her conversation with Zarate occurred two years after the November 2019 sergeants' meeting, months after depositions had been completed in this action, and weeks after Defendants moved for summary judgment.  If anything, LaMay's conversation with Zarate occurred during the course

of this litigation, not within the scope of Zarate's employment.  As such, the third statement in LaMay's declaration is inadmissible under Rule 801 and cannot be considered on summary judgment.

Ultimately, because no portion of these proffered declarations are admissible under Rule 801(d)(2)(D), or any other exception or exclusion to the hearsay definition, this Court should deny LaMay's motion to supplement and refrain from considering the declarations in deciding Defendants' motion for summary judgment.

### B.     LaMay's declaration should be rejected under the sham-affidavit rule.

Under the sham-affidavit rule, "a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021).  The Sixth Circuit has set forth the following purpose of the sham-affidavit rule:  "If a party who has been examined at length under oath could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *France v. Lucas*, 836

10

F.3d 612, 622 (6th Cir. 2016) (cleaned up).  And the rule applies in two circumstances:  (1) "when a witness's affidavit '**directly contradicts**' the witness's prior testimony[;]" and (2) "when the witness's affidavit is **in tension with that prior testimony** as long as the circumstances show that the party filed the affidavit merely to manufacture 'a sham fact issue.'"  *Boykin*, 3 F. 4th at 842 (emphasis added).

Here, LaMay's statement that she believes Whitfield knew that she is gay directly contradicts with her previous testimony.[2]  In particular, the following exchange took place during LaMay's deposition regarding the November 2019 sergeants' meeting:

> **Q.** Now, do you -- you mentioned that you said you were the only gay person in the room. Did I hear you correctly?
>
> **A.** That's correct.
>
> **Q.** And how many other people were in the room?
>
> **A.** I would say there was ten to 15 other people in the room.
>
> **Q.** And do you know all of those ten to 15 people well enough to know whether none of them are gay?
>
> **A.** Yeah, I believe I do.
>
> **Q.** Okay.  Do you believe that all of the other people in the room knew that you were gay?

---

[2] As is discussed below, it is also consistent with her interview in the Professional Standards Section's investigation of the complaints against Whitfield.

**A.** I don't know whether they all knew or not.

**Q.** *Do you know if Lieutenant Whitfield knew if you were gay?*

**A.** *I don't know if he knew at that time or not.*

(Ex. C, LaMay Dep. Tr., pp 27–28, emphasis added.)

Clearly, LaMay's previous testimony that she did not know whether Whitfield knew she was gay contradicts the statement in her affidavit that she believes Whitfield knew she was gay. Accordingly, under the sham-affidavit rule, this Court should disregard her recently-changed testimony.

But even if the Court were to find that these statements do not directly contradict one another, they are, at a minimum, in tension, and the circumstances here show that the affidavit is being proffered to create a sham issue of fact. *See Boykin*, 3 F. 4th at 842. Specifically, LaMay is submitting her declaration after giving a deposition in this case and only after the Court questioned at the oral argument on Defendants' motion for summary judgment whether Whitfield knew she was gay. Further, nothing in the record evidence demonstrates any prior belief that LaMay had regarding Whitfield's knowledge of her sexual orientation. In fact, she told the State Police's Professional Standards Section (or "PSS") during its investigation of her complaint

against Whitfield that she "d[id] not know if [ ] Whitfield [was] aware she is gay." (Ex. D, PSS-188-20 Investigative Report, p. 16 of 29.)

In sum, LaMay's declaration was offered after testifying that she did not know whether Whitfield knew she was gay, after stating the same to PSS during their investigation, and after this Court asked for record evidence at oral arguments. If ever there was a situation where the circumstances surrounding a declaration suggested it was being submitted to create a sham issue of fact, this is that situation. As such, this Court should disregard LaMay's declaration.

### C. LaMay's declaration is not signed and dated and, therefore, does not comply with 28 U.S.C. § 1746.

As noted above, Fed. R. Civ. P. 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Generally, unsworn affidavits or declarations are "technically deficient and should not be considered in making [a summary judgment] determination." *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). However, 28 U.S.C. § 1746 provides an exception to this

rule by permitting a person to submit an unsworn declaration so long as the declaration is made in the following form:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).
> (Signature)"

28 U.S.C. § 1746(2); see also *Bonds*, 20 F.3d at 702 (providing that "[u]nsworn declarations are permitted to be used as evidence only if "subscribed as true under penalty of perjury, and dated") (cleaned up).

From its face, however, it is clear that LaMay's declaration does not comply with 28 U.S.C. § 1742 as it is neither signed nor dated.  (*See* ECF No. 30-1, PageID.646.)  As such, absent a date or signature by LaMay, the "declaration is not competent summary-judgment evidence because it fails to comply with either Federal Rule of Civil Procedure 56(c)(4) or 28 U.S.C. § 1746." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 767 n. 1 (6th Cir. 2018).

For this reason alone, LaMay's motion with respect her declaration must be denied.

14

## II.  If this Court were to consider the proffered declarations, it should also consider the remainder of relevant record evidence as it relates to Whitfield's knowledge.

As a general matter, "in entertaining a motion for judgment as a matter of law, the [district] court[s] should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).  Accordingly, if the Court ultimately grants LaMay's motion to supplement and considers the LaMay and Zarate declarations in its disposition of the pending summary judgment motion, it should also take account of the remaining, relevant record evidence with respect to Whitfield's alleged knowledge of LaMay's sexual orientation.  And as is clear from the material summarized below, the record lacks any evidence showing that Whitfield was aware LaMay's sexual orientation when she applied for the promotion in January of 2020.

To start, it is worth reviewing LaMay's deposition testimony. Contrary to her statements in her declaration that she "ha[s] known and/or worked with [ ] Whitfield most of [her] 22-year career[,] (*see* ECF No. 30-1, PageID.646), LaMay testified at her deposition that, although she knew who he was while they were both troopers at the old Detroit post, she never formed an opinion of him as she "never worked with

him[,]" (Ex. C, pp. 13–14.)  After the two were bother troopers in
Detroit, LaMay and Whitfield did not cross paths again until 2019 at
the State Police's Metro North Post in Oak Park.  (*Id.*, pp. 14–15.)  But
although both LaMay and Whitfield worked out of the Metro North
Post, LaMay was never in Whitfield's chain of command as she worked
out of the Second District's detective bureau.  (*Id.*, p. 15.)

As a result of LaMay not being in Whitfield's chain of command,
all supervision and performance evaluations were completed by
LaMay's commanding officers in the detective bureau—not by
Whitfield.  (*Id.,* p. 16.)  In fact, LaMay's first specific recollection of
interacting with Whitfield at the Metro North Post was the November
2019 sergeants' meeting referenced in her complaint.  (*Id.*, pp. 19–20;
*see also* ECF No. 16, PageID.84–85.)  As for her interactions with
Whitfield at Metro North, LaMay explained that those interactions
were limited to passing each other in the hall and debriefing him on
certain investigations.  (Ex. C, pp. 55–56.)  And the investigation-
related debriefings typically took in Whitfield's office without Whitfield
making any inappropriate or derogatory remarks.  (*Id.*, pp. 57–59.)
Ultimately, LaMay's testimony regarding her previous interactions with

Whitfield is consistent with her deposition testimony that she did not
know whether he was aware of her sexual orientation and also
consistent with her statements during the 2020 interview with PSS.
(*See* Ex. C, pp. 27–28; Ex. D, p. 16 of 29.)

Additionally, considering that LaMay is attempting to admit
Trammel's out-of-court statements through her and Zarate's
declarations, it is worth reviewing Trammel's deposition testimony as
well as his statements during the 2020 PSS investigation.[3]  As for his
deposition testimony, LaMay, through counsel, asked whether Trammel
met with Whitfield after the November 2019 sergeants' meeting.  (Ex.
E, Trammel Dep. Tr., p. 17.)  Trammel testified that he did speak with
Whitfield, but he never testified that he informed Whitfield that LaMay
was gay.  (*Id.*, pp. 17–18.)  Rather, Trammel merely explained that he
told Whitfield to watch what he was saying and be aware of the fact
that he is speaking to people he supervises.  (*Id.*)  And in his interview
with PSS, Trammel recalled that he told Whitfield after the sergeants'
meeting that "he should not have made the comments he did during the

---

[3] Also, LaMay noticed and took Zarate's deposition, (*see* ECF No. 22-3,
PageID.287–297), but never elicited any testimony from Zarate
regarding Whitfield's alleged knowledge of LaMay's sexual orientation.

17

meeting and [that] he should approach this type of conversation differently because they have gay employees." (Ex. D, p. 21 of 29.) Notably, Trammel, whose deposition was also noticed and taken by LaMay, did not testify that he told Whitfield LaMay was gay, which his consistent with his statement to the PSS investigator that he "was not sure if [ ] Whitfield was aware that [ ] LaMay is gay." (*Id.*, p. 22 of 29.)

In short, there is substantial record evidence to support the conclusion that Whitfield was unaware of LaMay's sexual orientation. And even if the Court grants LaMay's motion, Defendants maintain that the collective weight of the evidence still supports a finding that Whitfield was not aware of LaMay's sexual orientation. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (explaining that the relevant question on summary judgment is not whether "the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented" and that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably find* for the plaintiff") (emphasis added).

18

In other words, summary judgment in Defendants' favor on the basis of Whitfield lacking knowledge of LaMay's sexual orientation would still be appropriate, even if LaMay's motion were granted.  *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1759 (2020) (noting the logical implication that "[a]n employer cannot intentionally discriminate on the basis of a characteristic of which the employer has no knowledge").  (ALITO, J., dissenting).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants request that this Court enter an order denying the instant motion to supplement the summary judgment record and granting summary judgment in Defendants' favor.

Respectfully submitted,

/s/ Adam R. de Bear
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
debeara@michigan.gov
P80242

Dated:  December 29, 2022

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on December 29, 2022, I electronically filed

the above document(s) with the Clerk of the Court using the ECF

System, which will provide electronic copies to counsel of record.

/s/ Adam R. de Bear
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
debeara@michigan.gov
P80242

#2020-0302494-A